## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-00869-MSK-BNB

**RICHARD FINNEY,**

    Plaintiff,

v.

**LOCKHEED MARTIN CORPORATION,**

    Defendant.

---

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the Defendant Lockheed Martin Corporation's ("Lockheed") Motion for Summary Judgment (**#29**), the Plaintiff Richard Finney's Response (**#37**), and Lockheed's Reply (**#38**).

## ISSUES PRESENTED

Mr. Finney asserts two claims related to his termination from Lockheed in 2012: (1) age discrimination and hostile work environment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*; and (2) retaliation in violation of the ADEA. The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## MATERIAL FACTS

Based upon the evidence submitted by the parties, which the Court construes most favorably to Mr. Finney, the basic material facts are as follows. As needed, additional evidence and facts will be discussed as part of the Court's analysis.

Mr. Finney is currently 56 years old, and holds a master's degree in electrical engineering. He began working for Lockheed in 1980. Through 2008, Mr. Finney's superiors consistently gave him positive performance evaluations.

In 2008, Mr. Finney was working on the Aerial Reconfigurable Embedded System (ARES). As the ARES project began winding down, Mr. Finney began working part time with the Gravity Recovery and Interior Laboratory (GRAIL) program. He transitioned to full-time work on the GRAIL program in April 2009. While working on GRAIL program, Mr. Finney's manager, Stuart Spath, tried to have him removed from the program and then rated him as a "basic contributor" in his annual review.[1] This was the first negative review Mr. Finney had received in his career with Lockheed. In response to his 2009 performance review, on June 22, 2010, he filed a Charge of Discrimination against Lockheed with the EEOC.[2]

In December 2010, Mr. Finney was notified that his work on the GRAIL project was coming to an end. He and his supervisors began looking for another assignment for him. David Chang, the manager of the Global Positional System III (GPS-III) program, agreed to "borrow" Mr. Finney for the GPS-III program for a trial period. After three months, Mr. Finney applied for an open "Grade 3 engineer" position[3] with the GPS-III program and Mr. Chang approved his transfer. Mr. Finney was a Grade 5 engineer before joining the GPS-III project, but he was reduced to a Grade 4 engineer in June 2011, although there was no pay reduction. In an email

---

[1] Lockheed's review procedure is known as the Performance Assessment and Development Review (PADR). At the time it used a five-tier rating system: exceptional was a "1"; high contributor was a "2"; successful contributor was a "3"; basic contributor was a "4"; and unsatisfactory was a "5".

[2] The claims asserted in Mr. Finney's Complaint in the instant action are not based on this Charge of Discrimination.

[3] The engineering positions are divided into five grades, with Grade 5 being the highest.

2

dated June 28, 2011, Mr. Finney complained about his reduction in status to Mr. Chang and stated that he believed he was "singled out for discrimination, and subsequently retaliation actions." On August 23, 2011, Mr. Finney filed a second Charge of Discrimination based on age with the EEOC.

In September 2011, Timothy Halbrook became Mr. Finney's direct supervisor in the GPS-III project. Mr. Finney contacted Mr. Halbrook to request assistance with becoming a Grade 5 engineer, again. On October 10, 2011, Mr. Finney presented Mr. Halbrook with his "Formal Request for Reinstatement as Senior Staff Engineer." It outlined Mr. Finney's experience and stated that "Mr. Finney has been subject to various discrimination and retaliation actions by Mr. Tim Linn and Mr. Stu Spath, as properly and fully reported to Ethics and EEO." Mr. Halbrook advised Mr. Finney that he would be placed on a performance improvement plan (PIP). Mr. Halbrook issued the PIP in November 2011, but later issued a second PIP to correct errors in the first one. Mr. Halbrook rated Mr. Finney as a basic contributor in his annual PADR review for 2011. On December 20, 2011, by email Mr. Finney complained to human resources personnel that the review "serve[d] no purpose but to do purposeful, malicious, irreparable harm to one of this company's best employees." The email also stated that the assessment was an "additional directed act of retaliation." Copies were sent to Mr. Halbrook and Mr. Chang.

In 2012, as part of a reduction in force (RIF) implemented by Lockheed, Mr. Halbrook and Mr. Chang made the decision to eliminate one electrical engineering position.[4] Mr. Halbrook and Mr. Chang decided to consider Grade 4 engineers for the RIF. Mr. Finney was still a Grade 4 engineer.

---

[4] When he began working on the GPS-III program, Mr. Halbrook supervised eighty employees. The Vice President of the GPS-III program instructed Mr. Halbrook to reduce his department to fifty employees. Mr. Halbrook did so through a combination of layoffs, eliminating overtime, and reducing the number of part-time employees assigned to the program.

For a RIF, Lockheed used a Talent Differentiation Ranking Sheet to evaluate and compare employees. Managers and supervisors of the employees potentially affected held a Talent Differentiation Ranking (TDR) session, and then submitted their assessments to HR. During the TDR session, the managers and supervisors rated all employees being considered according to a number of factors including as job complexity and breadth, and the employee's skill level. These scores were combined with the employee's average performance review ratings and adjusted for length of service to calculate the employee's score on the Talent Differentiation Ranking Sheet. The employee with the highest score was selected for layoff.

The TDR for Grade 4 engineers in the GPS-III program was held on March 23, 2012. At the end of that session, Mr. Finney had the highest score. On April 12, 2012, Mr. Chang notified Mr. Finney that he would be laid off on April 26, 2012, unless he could find another position within Lockheed before that date. Mr. Finney was unsuccessful in locating another position within Lockheed and consequently was laid off.

On August 3, 2012, Mr. Finney filed a third Charge of Discrimination with the EEOC, alleging that Lockheed laid him off because of his age and in retaliation for the complaints of discrimination he filed internally and with the EEOC. He received a Notice of Right to Sue on January 4, 2013. Mr. Finney filed this lawsuit on April 4, 2013 asserting two claims against Lockheed (1) age discrimination and hostile work environment in violation of the ADEA; and (2) retaliation for engaging in protected activity under the ADEA.

## **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and

4

a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Substantive law governs which facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## ANALYSIS

Lockheed moves for summary judgment on both of Mr. Finney's claims.

### 1. Age Discrimination

The ADEA broadly prohibits discrimination in the workplace based on age. 29 U.S.C. § 623(a). Mr. Finney's first claim asserts Lockheed discriminated against him by laying him off and subjecting him to a hostile work environment because of his age.

a. **Termination**

When there is no direct evidence of discrimination, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, Mr. Finney first bears the burden of establishing a *prima facie* case for his claim of age-based discrimination. If he is successful, the burden shifts to Lockheed to articulate a legitimate, non-discriminatory reason for his termination. If Lockheed does so, Mr. Finney then bears the ultimate burden of demonstrating that Lockheed's proffered reason is a pretext for discrimination. Lockheed asserts that Mr. Finney cannot establish a *prima facie* case of discrimination and, even if he can, that he has not presented sufficient evidence to show that Lockheed's proffered reason is pretext.

For a *prima facie* case of age discrimination under the ADEA, Mr. Finney must come forward with evidence to prove that (1) he belongs to the class protected by the ADEA; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) he was treated less favorably than others not in the protected class. *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1279 (10th Cir. 2010).

For purposes of this motion there is no dispute that Mr. Finney has presented sufficient evidence to establish the first and second elements of a *prima facie* age discrimination claim under the ADEA. However, Lockheed argues that Mr. Finney cannot establish that he was qualified for his position or treated less favorably than others not in the protected class.

Construing the evidence most favorably to Mr. Finney, the Court finds it sufficient for a *prima facie* case.  Mr. Finney has testified that his work on the GPS-III program was satisfactory, which is sufficient to satisfy the third element. *See Hodgson v. U.S. Air Force*, 999 F.2d 547, 3 (10th Cir. 1993). Additionally, a plaintiff who has been terminated because of a RIF

6

can establish the fourth element by pointing to circumstances that show that the employer instead chose to retain a younger employee. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1167 (10th Cir. 1998). Mr. Finney has satisfied this element because he has submitted evidence that several of the Grade 4 engineers retained by Lockheed were younger than he was.

In response to Mr. Finney's *prima facie* case, Lockheed argues that the RIF and its implementing criteria demonstrate that its decision to lay Mr. Finney off was based on a nondiscriminatory reason: the RIF implemented in 2012. This is sufficient to meet its burden under the second step of the *McDonnell Douglas* framework and, accordingly, the burden shifts back to Mr. Finney to demonstrate why such reason is pretextual. *See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

A plaintiff can demonstrate pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason that a reasonable trier of fact could rationally conclude that the proffered reason is untrue. *Plotke v. White,* 405 F.3d 1092, 1102 (10th Cir. 2005). More specifically, in cases involving a RIF, a plaintiff can demonstrate pretext by presenting evidence that (1) his termination does not accord with the RIF criteria supposedly used, (2) his evaluation under the defendant's RIF criteria was deliberately falsified or manipulated to secure the plaintiff's dismissal, or (3) the RIF was generally pretextual. *See Beaird*, 145 F.3d at 1168. Here, Mr. Finney argues that Mr. Halbrook deliberately falsified his 2011 PADR score and manipulated the RIF process in order to ensure that Mr. Finney would be laid off.

With regard to the 2011 PADR score, the evidence shows that Mr. Halbrook gave him a negative score after placing him on an inaccurate PIP that was later revised. There is also evidence that Mr. Halbrook relied on other employees' observations rather than his own. Viewed

in the light most favorable to Mr. Finney, such evidence could show an erroneous 2011 PADR score.

However, this evidence is insufficient to establish pretext for two reasons. First, in the pretext context, "a plaintiff cannot prevail by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence (over and above that of the prima facie case) of age discrimination." *Young v. Cobe Labs., Inc.*, 141 F.3d 1187 (10th Cir. 1998). In other words, it is not enough for Mr. Finney to show that his 2011 PADR was inaccurate, he must also show that the supervisor responsible for assessing his performance—here, Mr. Halbrook—displayed age-related animus toward him because of his age. *See Beaird*, 145 F.3d at 1168. Mr. Finney has produced no evidence of this kind.

Second, when determining whether the proffered reason for a decision was pretextual, the Court examines "the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *Lobato v. New Mexico Environment Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013). The relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *Id.* In other words, although Mr. Finney believes he was a good performer, it is the decision-maker's perception rather than Mr. Finney's perception that is relevant. *See Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1196-97 (10th Cir. 2006). Even if Mr. Halbrook erroneously relied on other employees' observations or gave credence to an inaccurate PIP, Mr. Finney's claim fails unless he can show that Mr. Halbrook believed that Mr. Finney was deserving of a higher performance score, but nevertheless chose to give him a negative score because of age-related animus. Mr. Finney has not identified any

8

evidence that would suggest either that Mr. Halbrook did not actually believe Mr. Finney deserved a negative score on his 2011 PADR or that he harbored any particular age-related animus.

Mr. Finney also argues that Mr. Halbrook deliberately manipulated the RIF process in order to ensure that Mr. Finney would be laid off by (1) determining, in consultation with Mr. Chang, that a Level 4 engineer would be selected for a RIF; and (2) sending an email to the participants in the TDR session that influenced them to give Mr. Finney poor ratings.

Taking such evidence in the light most favorable to Mr. Finney it also is insufficient to establish pretext. At most, they show that, because of Mr. Halbrook's actions, the TDR participants had the opportunity to manipulate the rankings of Level 4 engineers in a manner unfavorable to Mr. Finney. However, opportunity for manipulation does not, by itself, establish pretext. *See Beaird*, 145 F.3d at 1169. What is missing is evidence that there was manipulation motivated by age-related animus. There is no evidence of age-related animus on the part of Mr. Holbrook or any of the TDR participants. *See id.* at 1168. There is no evidence that any of the TDR participants believed that Mr. Finney's performance was the same as or better than other level 4 engineers but rated him lower than others. Accordingly, the Court finds that Mr. Finney has failed to show that Lockheed's proffered nondiscriminatory reason for terminating Mr. Finney was pretextual.

b. **Hostile work environment**

Mr. Finney also claims that he was subject to a hostile work environment in violation of the ADEA. To prevail on a hostile environment claim, he must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult that were sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment,

and the harassment stemmed from age-related animus. *See Mackenzie v. City and County of Denver,* 414 F.3d 1266, 1280 (10th Cir. 2005); *Lanman v. Johnson Cnty., Kansas,* 393 F.3d 1151, 1155 (10th Cir. 2004). To evaluate whether a working environment is sufficiently hostile or abusive, the Court examines the totality of the circumstances, including the frequency of the conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). The environment must be both subjectively and objectively hostile. *Id.* Additionally, the Supreme Court has instructed that courts judging hostility should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of age-related jokes, and occasional teasing, especially offhand comments and isolated incidents, "unless extremely serious." *See Mackenzie,* 414 F.3d at 1280.

Applying these principles, the Court concludes that the evidentiary record falls short of showing age-related harassment. Most of Mr. Finney's allegations of harassment relate to the employment decisions made by Mr. Halbrook, such as placing him on performance improvement plans and issuing a negative performance review. Even taken in the light most favorable to Mr. Finney, there is no evidence that such decisions rise to the level of being severe or pervasive in the work environment. Furthermore, there is no evidence that such decisions were the product of age-related animus or were undertaken for the purpose of intimidation, ridicule, or insult.

Mr. Finney points to the conduct of Tim Linn, his former manager on the GRAIL project, as "background evidence" to support his hostile environment claim. Mr. Finney states that Mr. Linn referred to younger employees as "doctor" to show that they were more special to the company than older employees such as Mr. Finney. After Mr. Finney reported this behavior, Mr.

10

Linn would walk around Mr. Finney's workspace "just to show snobbery" or would stomp past Mr. Finney's desk. In addition, Mr. Finney asserts that Mr. Linn would interrupt telephone calls between Mr. Finney and various vendors and dominate those meetings for five to ten minutes at a time. As offensive as such actions may have been, they are not relevant to Mr. Finney's current claim because Mr. Linn worked on an entirely different project than Mr. Halbrook, and they fall short of demonstrating pervasive or severe harassment. *See Mackenzie,* 414 F.3d at 1280. Accordingly, summary judgment is appropriate on Mr. Finney's hostile work environment claim.

### 2. Retaliation

Mr. Finney's second claim asserts that he suffered adverse employment actions in retaliation for filing several Charges of Discrimination alleging age discrimination.

The ADEA forbids an employer from retaliating against an employee because he or she "has opposed any practice made unlawful" by the statute, or because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. § 623(d). ADEA retaliation claims are also analyzed under the *McDonnell Douglas* framework. *See Piercy*, 480 F.3d at 1198. To establish a *prima facie* claim of retaliation a plaintiff must show: 1) he was engaged in opposition to ADEA discrimination; 2) he was subjected to an adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. *See id.* For purposes of this motion there is no challenge as to the sufficiency of evidence for the first two elements. However, Lockheed argues that Mr. Finney cannot present sufficient evidence to establish a causal connection between his complaints and the decision to lay him off.

A plaintiff may rely solely on temporal proximity to establish the third element of a *prima facie* claim "if the termination is *very closely* connected in time to the protected activity."

*See Metlzer v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (internal quotations omitted). In an email dated March 21, 2012, Mr. Finney complained about "younger less experienced individuals" being selected instead of him for numerous positions and stated that had "observed discrimination and retaliation actions . . . which have been reported to the EEOC." Mr. Finney states that two days after the email was sent the GPS-III managers and supervisors held the differentiation ranking session (TDR) in which they had him "singled out for termination." Lockheed notified Mr. Finney that he was being laid off on April 12, 2012. Taken in the light most favorable to Mr. Finney, the proximity of these events is sufficient to establish a causal connection.

Again, Lockheed identifies a legitimate reason for Mr. Finney's termination — the RIF. The burden shifts back to Mr. Finney to demonstrate why the stated reasons are pretextual. *See Piercy*, 480 F.3d at 1200. At this stage of the *McDonnell Douglas* analysis it is insufficient to rely solely on temporal proximity between the complaints and the RIF decision. *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1138 (10th Cir. 2005). In addition to temporal proximity, Mr. Finney must present at least circumstantial evidence of retaliatory motive. *See Metzler*, 464 F.3d 1164, 1172 (10th Cir. 2006).

Mr. Finney offers two items circumstantial evidence. First, he points to an email from Mr. Halbrook to two mangers who participated in the TDR, in which Mr. Halbrook states that he "would like to remove him from our team ASAP." There are several difficulties in the circumstantial inferences that can be drawn from this email relative to Mr. Finney's pretext argument. The email does not refer to any complaints made by Mr. Finney. Instead, it states that Mr. Halbrook wants to remove Mr. Finney because "[h]is conduct is insubordinate and his continued presence on [the team] is not fair to those who have performed well." More

importantly, however, this email was sent on Saturday March 24, 2012, the day *after* the TDR session. Indeed, Mr. Chang's response to Mr. Halbrook's email that "[W]e did hold a TDR session on Friday", confirms that the TDR occurred before Mr. Halbrook's email was sent and it suggests that Mr. Halbrook was not present at the TDR. Even considering Mr. Halbrook's email most favorably to Mr. Finney, no circumstantial inference can be reasonably drawn that the TDR rankings were the result of retaliatory motive.

Second, Mr. Finney points to the fact that he was rated "as bad or worse than every other employee being evaluated in every category." Mr. Finney does not elaborate on the significance of this point, but the Court interprets the crux of Mr. Finney's argument to be that the consistency of these poor ratings implies that there was concerted effort by the participants in the TDR session to ensure that Mr. Finney had the highest score. Again, assuming such to be the case, there is no evidence that links the poor rankings to Mr. Finney's prior complaints. Accordingly, Mr. Finney has failed to present circumstantial evidence sufficient to create an inference of pretext in the formulation of the TDR rankings.

.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (**#29**) is **GRANTED**. The Clerk shall enter judgment in favor of the Defendant and against the Plaintiff on all claims and close this case.

Dated this 24th day of March, 2015.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge